IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-169-D

LESTER BARRETT,            )
                           )
    Plaintiff,             )
                           )
        v.                 )           **MEMORANDUM &**
                           )           **RECOMMENDATION**
CAROLYN W. COLVIN,         )
ACTING COMMISSIONER OF     )
SOCIAL SECURITY,           )
                           )
    Defendant.             )

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Lester Barrett ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be denied, Defendant's Motion for Judgment on the Pleadings [DE-27] be granted, and the agency's final decision be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability and DIB on January 12, 2011 and SSI on January 20, 2011, alleging disability beginning August 16, 2009. (Tr. 63-64,

193, 199.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 63-64, 140-41.) On July 25, 2012, a hearing was held before Administrative Law Judge Edward W. Seery ("ALJ"), at which Plaintiff was represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 32.) The ALJ issued an unfavorable ruling on September 7, 2012. (Tr. 19.) On June 14, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.    Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines

2

whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since August 16, 2009, the alleged onset date. (Tr. 13.) Next, the ALJ determined Plaintiff had the following severe impairments: "diabetes mellitus, visual impairment, and obesity." (*Id.*) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or

3

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform light work with the following restrictions:

> [T]he claimant should avoid exposure to unprotected heights, dangerous machinery, and automotive equipment; and the claimant has no serviceable vision in one eye and has a slight difficulty with near and far vision in his better eye, with slight difficulty in depth perception and peripheral vision.

(Tr. 14.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 16.) At step four, the ALJ concluded Plaintiff was not capable of performing the requirements of his past relevant work. (Tr. 17.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 17-18.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ improperly evaluated the medical opinions of treating physicians. Second, Plaintiff asserts that the ALJ erred by not consulting a medical expert and, instead, questioning the VE on issues outside her expertise.

### A. Treating Physician's Opinion

Plaintiff contends that the ALJ improperly evaluated the medical opinions of Dr. Enrique Marana and Dr. Shirley Melvin. Dr. Marana served as Plaintiff's treating physician from February 2007 until May 2012. (Tr. 343, 429.) Dr. Melvin was a consultative examiner that examined Plaintiff in June 2011. (Tr. 423.)

4

Case 4:13-cv-00169-D   Document 30   Filed 06/24/14   Page 4 of 10

Each doctor found Plaintiff to have limitations based on his impairments. Dr. Melvin stated that Plaintiff could stand for ten to fifteen minutes because of his obesity and back pain, sit eight hours, lift or carry forty to fifty pounds for a short distance and had a fair to poor prognosis. (Tr. 422-21.) Dr. Marana attested that Plaintiff suffered from neuropathy and retinitis proliferans. (Tr. 428.) He additionally opined that Plaintiff had several restrictions on his work capabilities, including: Plaintiff could work zero hours-per-day; Plaintiff could stand fifteen minutes at a time and sit thirty minutes at a time; Plaintiff could occasionally and frequently lift only five pounds; and Plaintiff could balance occasionally. (*Id.*) The ALJ gave little weight to both physicians' opinions. (Tr. 15-16.)

Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.* "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. June 9, 2011) (citing 20 C.F.R. § 404.1527(e)(1)).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(2)–(5); *see also Parker*, 792 F. Supp. 2d at 894.

Here, the ALJ provided reasons for giving each physician limited weight. Concerning Dr. Melvin's opinion, the ALJ stated her opinion was given limited weight because her assessment was based upon a single evaluation and she did not have "the benefit of reviewing the claimant's symptoms over an extended period of time." (Tr. 16.) Additionally, the ALJ determined that Dr. Marana's opinion that Plaintiff is unable to work is not a medical opinion but an administrative finding reserved for the Commissioner's decision. *See* 20 C.F.R. § 416.927(d) (providing that administrative findings that would direct the decision of disability, *e.g.*, a statement by a medical source that a claimant is "disabled" or "unable to work," are reserved to the Commissioner and are not entitled to any special significance, regardless of the source). In further support of the weight accorded to Dr. Marana's opinions, the ALJ explained that Dr. Marana's opinions are not consistent with the medical evidence of record or with Plaintiff's own testimony. (Tr. 16.) For example, Dr. Marana stated that Plaintiff is able to lift only five pounds, whereas Plaintiff testified that he could lift thirty.

Assuming the ALJ erred in his consideration of the factors in 20 C.F.R. § 404.1527 any such error was harmless because both assessments are greatly inconsistent with the medical record. Although Plaintiff and Dr. Marana had an extensive treatment history, there were inconsistencies between the assessment and Dr. Marana's own records and the medical record as a whole. Dr. Marana reported that Plaintiff has neuropathy in his medical assessment, but there is no mention within the medical record that such a diagnosis has ever been made. (Tr. 428.) Additionally, Dr. Marana consistently clears Plaintiff for aerobic exercise. (Tr. 344, 350, 431, 434, 436.) As late as May 15, 2012, Dr. Marana reported that Plaintiff "does not have any diabetic complications" (Tr. 429) even though there is evidence throughout the record that Plaintiff's visual impairments are largely a result of his diabetes. (Tr. 302, 314, 404-405, 419). Dr. Marana's assessment appears to greatly exaggerate Plaintiff's physical limitations when no such concerns are noted or reported in his treatment notes. Further, Dr. Melvin's opinion is based upon low back pain and neuropathy, although there has been no indication of neuropathy in the medical record and no mention of low back pain.

Even if fault could be taken with the ALJ's consideration of the factors laid out in the regulations, any error is harmless because there are such large inconsistencies between the assessments of both physicians and the medical record. Based on these inconsistencies, the court finds no reasonable possibility that remand would result in a finding that these physicians' opinions are entitled to greater weight.

### B. Vocational Expert

Secondly, Plaintiff asserts that the ALJ erred by relying on the VE's interpretation of medical evidence instead of consulting a medical expert. The Plaintiff appears to argue that the fact that Plaintiff has 20/200 vision in his left eye and 20/50 vision in his right eye is raw medical

data relating to Plaintiff's visual acuity, which requires interpretation by a medical expert. He additionally maintains that a VE is not qualified to interpret such raw medical data.

An ALJ may meet his burden under step five of the evaluation process by calling a VE to testify concerning relevant hypotheticals. 20 C.F.R. § 404.1566. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). The visual acuity necessary to perform a job is a subject about which a VE may attest. *See Hagans v. Colvin*, No. 4:12-CV-134-FL, 2013 WL 5424604, at *11-12 (E.D.N.C. Sept. 26, 2013) (adopting memorandum and recommendation which found no error in VE's testimony concerning claimant's ability to perform jobs with limited visual acuity). Additionally, an ALJ may rely on the VE's testimony where his testimony is consistent with the *Dictionary of Occupational Titles* ("DOT") or the ALJ elicits a "reasonable explanation" for any discrepancy between the VE's testimony and the DOT. *Fisher v. Barnhart*, 181 Fed. App'x 359, 365 (4th Cir. 2006); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

At the hearing in this case, the ALJ asked the VE the following hypothetical:

ALJ: [I]f we were to assume a hypothetical person the same age, education, and past work as the claimant, and if you would refer to this individual as confined, strength wise, to light work, with the additional limitations that you would have to avoid things like unprotected heights, dangerous machinery, [INAUDIBLE] equipment due to his visual problems. Let me take a look at this. And I think, let's assume that vision on one side, best he had was 20[/]200 – let's assume no services – worst was no serviceable vision on one side. In the better eye, he would have slight difficulty – I'm trying to think – slight difficulty in near and or far vision, which would cause some difficulty, slight difficulty with depth perception, and peripheral vision.

VE: Did you say 20[/]40?

ALJ: Yeah, 20[/]40, 20[/]50, about that.

8

  VE: Okay.

  ALJ: And that, as I see it, that's the best eye. Based upon that profile, would there be jobs in your opinion that a person could perform in significant numbers?

(Tr. 58-59.) The VE responded that the following jobs were available: copy machine operator (DOT 207.685-014), cashier II (DOT 211.462-010), and host (DOT 352.667-010). (Tr. 59).

  The ALJ continued by asking the VE a second hypothetical, a large portion of which is inaudible. Although the court is not able to review this hypothetical, it is evident from the ALJ's decision that the limitations contained in the first hypothetical were the basis for the ALJ's RFC determination. *See Nelson v. Colvin*, No. 4:12-CV-97-FL, 2013 WL 4504269, at *10-11 (E.D.N.C. Aug. 22, 2013) (finding no error when a portion of the hypothetical is inaudible, but when read alongside the RFC, the limitations present become clear.)

  Before eliciting the VE's testimony, the ALJ asked the VE to explain any difference between her testimony and the DOT. (Tr. 57.) The VE was not questioned by Plaintiff's attorney at the hearing, and there is nothing in the record that would suggest that the VE's testimony was other than consistent with the DOT. Accordingly, the ALJ did not err in relying on the VE's testimony regarding Plaintiff's visual impairments.

## **CONCLUSION**

  For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-27] be GRANTED, and the final decision of the Commissioner be AFFIRMED.

  The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon

grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 46ỳ day of June 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge